Joshua H. Haffner, SBN 188652
(jhh@haffnerlawyers.com)
Graham G. Lambert, SBN 303056
(gl@haffnerlawyers.com)
HAFFNER LAW PC
445 South Figueroa St., Suite 2325
Los Angeles, California 90071
Telephone: (213) 514-5681
Facsimile: (213) 514-5682

Attorneys for Plaintiff,
FRANK LEITZBACH

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK LEITZBACH, an individual; on behalf of himself and all other similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ATLAS VAN LINES, INC.; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:16-cv-08790-GW-E<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Complaint Filed: October 25, 2016<br>Removal Date: November 28, 2016<br>Trial Date: None<br>District Judge: Hon. George H. Wu<br>Magistrate Judge: Hon. Charles F. Eick |

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** on December 11, 2017 at 8:30 a.m., in Department 9D of this Court, located at 350 West 1st Street, Los Angeles, CA 90012, Plaintiff Frank Leitzbach("Plaintiff"), individually and on behalf of all others similarly situated, will, and hereby does, move the Court pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b) for an order:

1) Preliminarily approving the Settlement Agreement between Plaintiff and Defendant, on the grounds that its terms are sufficiently fair, reasonable, and adequate for notice to be issued to the class;

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

2) Certifying proposed settlement classes for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(c);

3) Certifying proposed settlement classes for settlement purposes only, pursuant to 29 U.S.C. § 216(b);

4) Approving the form and content of the proposed class notice, collective notice, and notice plan;

5) Appointing Joshua H. Haffner and Graham G. Lambert of Haffner Law PC as the class counsel;

6) Appointing CPT Group as Settlement Administrator;

7) Scheduling a hearing regarding final approval of the proposed settlement, Class Counsel's request for attorneys' fees and costs, and enhancement payments to the named Plaintiff;

8) Removing all current deadlines and hearings from the calendar; and

9) Granting such other and further relief as may be appropriate.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities below; the Declaration of Joshua H. Haffner filed concurrently herewith; all supporting exhibits filed concurrently herewith; all other pleadings and papers filed in this action; and any argument or evidence that may be presented at or prior to the hearing in this matter.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Frank Leitzbach ("Plaintiff"), as an individual and on behalf of all others similarly situated, has reached a settlement with Defendant Atlas Van Lines, Inc. ("Defendant" or "Atlas") which will resolve California wage and hour claims against Defendant arising from its alleged misclassification of truck and moving drivers who provided services to Defendant as independent contractors.  The terms of said settlement agreement are reflected in the Joint Stipulation of Class Action Settlement. *See* Declaration of Joshua H. Haffner ("Haffner decl."), Exh 1. (Settlement Agreement).

Discussions and negotiations between counsel for the Parties, formal and informal disclosures and discovery, a full-day mediation, as well as the investigation and evaluation of the claims of Plaintiff by the Parties have permitted both sides to accurately assess the merits of the claims and the defenses to those claims.  The Parties agree that the above-described investigation and evaluation, as well as documents exchanged are sufficient to assess the merits of the Parties' respective positions and to compromise the issues in a fair and equitable basis.  The Parties have, therefore, concluded it is desirable that the action be settled, upon such terms and conditions as set forth herein and in the Settlement Agreement.

In exchange for a release of claims, Defendant has agreed to a settlement that provides monetary relief for the Class, as defined in the Settlement Agreement.  The settlement is a non-reversionary settlement fund in the amount of $1,480,000.00. This is a good result.  The Class faces challenges to establishing an employment relationship because Atlas operates through a network of difference independent agents, who actually contract with the drivers.  In addition, class members drove throughout the county and Plaintiff's claim is only for time worked in California.

Plaintiff submits that this settlement agreement, in light of the above

1

considerations, should be preliminarily approved.

## II.   FACTUAL BACKGROUND

### A.   Litigation History

This case was filed on October 25, 2016, in the Superior Court of California, County of Los Angeles, on behalf of Plaintiff and California truck drivers that Plaintiff alleged worked for Atlas and whom it misclassified as independent contractors rather than employees.  Plaintiff alleged that in misclassifying the truck drivers, Defendant violated California law by failing to provide meal and rest breaks, failing to pay minimum and overtime wages, failing to pay all wages due at separation, failing to reimburse business expenses, violating California's Unfair Competition Act ("UCL"), and failing to furnish timely and accurate wage statements. On November 28, 2016, Defendant removed the action to the United States District Court of California, Central District.  Dkt. No. 1.

On December 5, 2016 Defendant filed a motion to dismiss, and a motion to strike. Dkt. No. 14.  Defendant then filed a motion to transfer venue on January 11, 2017.  Dkt. No. 19. Plaintiff opposed both motions and a hearing was held on February 9, 2017.  The Court granted the motion to dismiss and motion to strike, in part, with leave to amend, except as to the failure to timely page wages which was granted without leave to amend.  Dkt. No. 29.  Plaintiff filed a First Amended Complaint in compliance with the Court's ruling on March 17, 2017.  Dkt. No. 32. On November 27, 2017, pursuant to the parties' settlement, Plaintiff filed a Second Amended Complaint, containing additional causes of action for violation of California Labor Code section 226 and PAGA.

On June 13, 2017, the Parties participated in an all-day private mediation session with Louis Marlin, an experienced mediator with over 40 years of litigation experience, including extensive work in wage and hour class actions.  Haffner Decl. at ¶ 7; *see* https://www.jamsadr.com/marlin/.   On July 17, 2017, following further negotiation and discussion, the Parties accepted the mediator's proposal and came to

2

an agreement to resolve the matter.  Haffner Decl. at ¶ 7.

**B. Discovery**

Plaintiff and Defendant have conducted formal and informal discovery. Plaintiff formally produced over 1,500 pages of documents in association with his initial disclosures. Haffner Decl. at ¶ 8. Defendant informally produced extensive documentation and information in advance of the mediation, including Atlas' policies and procedures, training materials, Plaintiff's complete file, Plaintiff's log sheets, the independent contractor agreement, agent agreements, the class size, the rate of pay and how it is calculated, and other pertinent information.  Haffner Decl. at ¶ 9.

## III.   TERMS OF THE SETTLEMENT

**A. Monetary Relief**

Under the terms of the settlement, Defendant will create a non-reversionary Gross Settlement Fund of One Million Four Hundred Eighty Thousand Dollars ($1,480,000.00).  Settlement Agreement ¶ 18.

**B. Release**

In exchange for this monetary consideration, Settlement Class Members will release all claims that were alleged based on the facts, allegations, and legal theories in the operative complaint.  Settlement Agreement ¶¶ 30, 31, 44.

**C. Plan of Allocation**

The Gross Settlement Fund shall be $1,480,000.00.  Settlement Agreement ¶ 18.  The Net Settlement Fund shall be the Gross Settlement Fund, less: (i) the award to Class Counsel, including attorneys' fees and costs, (ii) the Class Representative Service Award, (iii) PAGA payment, (iv) required withholdings, and (v) settlement administration costs.  Settlement Agreement ¶ 20.

Subject to Court approval, not more than 30 percent of the Gross Settlement Fund ($440,000.00) will be allocated to attorneys' fees and up to $10,000 in case costs (the "Class Counsel Award").   Settlement Agreement ¶ 52(c).   Up to

3

$15,000.00 has been allocated for the Class Representative Service Award. Settlement Agreement ¶ 52(c).  $25,000.00 of the Gross Settlement Fund shall be allocated to the claims under California's Private Attorneys General Act ("PAGA") with seventy-five percent (75%), or $18,750, going to the California Labor and Workforce Development Agency and twenty-five percent (25%), or $6,250, being part of the Net Settlement Amount.  Settlement Agreement ¶ 52(e).  The estimated cost for settlement administration is $11,000.00. Settlement Agreement ¶ 52(f).

The Net Settlement Fund will be distributed to all Participating Class Members. Settlement Agreement ¶ 52(b). The amount each Participating Class Member will receive ("Individual Settlement Payment") shall be determined by multiplying Participating Class Member's Payment Ratio by the Net Settlement Fund. *Id*.  The Payment Ratio shall be the total number of Compensable Workweeks worked by the Participating Class Member divided by the total number of Compensable Workweeks worked by all Participating Class Members. *Id*.   A Participating Class Member shall be a Class Member who has submitted a valid claim. Settlement Agreement ¶ 23.  In addition, no amount of the Gross Settlement will revert to Defendant.  Settlement Agreement ¶ 52.

There are approximately 494 Class Members.  Assuming all fees, costs, and incentive awards are approved, each Class Member will receive on average approximately a $2,000.00 recovery.  If any class members opt-out, that will increase the Participating Class Members' recovery.  This is a good result, particularly as the Class could only pursue claims for time worked in California.

Individual Settlement Payments will be allocated as follows: thirty-three percent (33%) as wages; thirty-four percent (34%) as reimbursement for business expenses; and thirty-three percent (33%) as penalties and interest.   Settlement Agreement ¶ 52(a).

Participating Class Members will receive their payments by check via mail at their last known mailing address. Settlement Agreement ¶ 52(a).  Class Members

4

will also receive Defendant's records regarding the dates of qualification and may dispute this information if they believe it is not accurate. *Id*.

### E.   Notice Plan

The settlement provides that a Notice Packet will be sent to Class Members via US Mail.  Settlement Agreement ¶ 51(b).  The Parties believe that this will be the most effective way to distribute notice.  As part of the driver qualification process, Defendant collected and maintained the mailing address for all Class Members.

Pursuant to Rule 23, the notice will include information concerning the nature of the lawsuit; the release; the definition of the class certified; the class claims, issues, or defenses; that a member may opt out or object; the process for opting out or objecting; that a member may enter an appearance through an attorney; and the binding effect of class judgment on members, among other information. *See* Notice Of Class Action Settlement.

Class members shall have 45 days from day the notices are mailed to opt-out of the proposed settlement, submit a claim form, and/or object to the settlement. *Id*; *see also* Settlement Agreement at ¶ 32.

## IV.   LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive Court approval.  "Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to the Class Members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal 2004).

A court should grant preliminary approval if the parties' settlement "appears to be the product of serious, non-collusive negotiations, has not obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and fails within the range of possible

5

approval." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007).

Moreover, "a presumption of fairness arises where: (1) counsel is experienced in similar litigation; (2) settlement was reached through arm's length negotiations; (3) investigation and discovery are sufficient to allow counsel and the court to act intelligently." *In re Heritage Bond Litig.*, 2005 WL 1594403, *2 (C.D. Cal. June 10, 2005).   "In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned. *Id. citing Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "Generally, the district court's review of a class action settlement is 'extremely limited.'" *Harris v. Vector Marketing Corp.*, 2011 WL 1627973, *7 *citing Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998). "The Court considers the settlement as a whole, rather than its components, and lacks the authority to 'delete, modify or substitute certain provision.'" *Id. citing Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 630 (9th Cir. 1982).

## V.   CERTIFICATION OF THE SETTLEMENT CLASS

Where a litigation class has not been previously certified, courts must confirm the propriety of a settlement class by determining if it meets the four prerequisites identified in Federal Rule of Civil Procedure 23(a) and additionally fits within one of the three subdivisions of Federal Rule of Civil Procedure 23(b). *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 659 (E.D. Cal. 2008).

Here, the Parties have agreed to the following Class: all current and former California resident drivers who qualified to drive under Defendant's United States Department of Transportation Authority at any time from October 25, 2012 through the Preliminary Approval Date and who actually contracted and drove for Defendant or one of its Agents during that period.

### A.   Requirements of Fed. R. Civ. P. 23(a)

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

Rule 23(a) requires that a plaintiff demonstrate: (1) numerosity of plaintiffs; (2) common questions of law or fact; (3) that the named plaintiff's claims and defenses are typical; and (4) that the named plaintiff can adequately protect the interests of the class. *E.g. Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 441 (E.D. Cal. 2013).

### 1. Numerosity

A plaintiff will satisfy the numerosity requirement if "the class is so large that joinder of all members is impracticable." *Hanlon,* 150 F.3d at 1019.  "Although the requirement is not tied to any fixed numerical threshold, courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." *Villalpando v. Exel Direct, Inc.*, 303 F.R.D. 588, 605-606 (N.D. Cal. 2014).  Here, the Class consists of approximately 494 truck drivers.  Thus, numerosity is easily satisfied.

### 2. Commonality

A number of courts have found the commonality inquiry is met in cases in which plaintiffs assert wage and hour claims arising from their alleged misclassification as independent contractors.  *See, e.g., Bradley v. Networkers International, LLC*, 211 Cal.App.4th 1129 (2012), as modified on denial of reh'g (Jan. 8, 2013); *O'Connor v. Uber Technologies, Inc.,* 2015 WL 5138097 (N.D. Cal. Sept. 1, 2015), as modified in *O'Connor v. Uber Technologies, Inc.*, 311 F.R.D. 547 (N.D. Cal. 2015); *Dalton v. Lee Publications, Inc.*, 270 F.R.D. 555 (S.D. Cal. 2010); *Jaimez v. DAIOHS USA, Inc.*, 181 Cal.App.4th 1286 (2010); *Villalpando v. Exel Direct Inc.,* 330 F.R.D. 588 (N.D. Cal. 2014).  In such cases, courts have generally found that those who possess a right to control (provable, for example, by form contracts, as well as by a defendant's right to impose standards, rules, and procedures; the putative class members' job responsibilities; and the question of whether the putative class members are integral to the defendant's business) can be determined on a uniform basis through common evidence.  *Id.*  Likewise, the

7

substantive wage and hour claims that flow from such misclassification may be found to be resolvable on classwide basis. *Id.*

Plaintiff contends the same result should follow here, where he alleges that Defendant uniformly classified class members as independent contractors, all Class Members must sign an independent contractor agreement, meet similar eligibility requirements, comply with certain standards of operation established by Defendant, and perform similar job responsibilities. Accordingly, the commonality requirement of Rule 23 is satisfied.

### 3. Typicality

"Typicality is a permissive standard, and only requires that the named plaintiffs' claims' are 'reasonably coextensive' with those of the class." *Dalton*, 270 F.R.D. at 560. Thus, "[i]n examining this condition, courts consider whether the injury allegedly suffered by the named plaintiffs and the rest of the class resulted from the same alleged common practice." *Id.* (internal quotation omitted).

Here, Plaintiff contends there no differences between the Class Representative's claims and those of the respective Class he seeks to represent because Atlas' drivers have all been subject to the same alleged misclassification and resulting wage and hour violations. *See Norris-Wilson v. Delta-T Grp., Inc.,* 270 F.R.D. 596, 605 (S.D. Cal. 2010) (noting that "[t]he injuries alleged—a denial of various benefits—and the alleged source of those injuries—a sinister classification by an employer attempting to evade its obligations under labor laws—are the same for all members of the putative class" such that "[t]he typicality requirement is therefore satisfied").

### 4. Adequacy

"Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other Class Members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

As discussed above, Plaintiff contends the Class Representative's individual claims are consistent with the claims of other truck drivers he seeks to represent. Additionally, Plaintiff's counsel has significant experience litigating independent contractor misclassification cases, and class actions including many similar actions involving the misclassification of truckers. Haffner Decl. at ¶¶ 22-25. Accordingly, the adequacy of representation requirement has been met.

B.     **Requirements of Fed. R. Civ. P. 23(b)**

Rule 23(b)(3) requires the Court to find that: (1) "the questions of law or fact common to Class Members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

For reasons similar to those discussed above in connection with the "commonality" inquiry, Plaintiff contends that questions of law or fact common to Class Members predominate over individualized inquiries. Most notably, the issue of whether Class Members have been misclassified as independent contractors can be adjudicated on a classwide basis, as can Class Members' substantive claims. *See O'Connor,* 2015 WL 5138097, at *3 ("The Court concludes that the predominance requirement is satisfied with respect to whether the Class Members are properly classified as independent contractors or employees. The Court similarly concludes that Class Members' substantive [Labor Code] Claim can be litigated on a classwide basis because common questions predominate over individualized issues.").

In addition, Plaintiff contends class-wide treatment is superior to numerous individual actions. Some Class Members may have relatively small value claims, and most likely have no idea that they may have been misclassified or believe they were properly classified. Moreover, individual resolution of Class Members' claims would realistically result in small settlements with minimal deterrent effect, if they are remedied at all. *See, e.g., Noll v. eBay, Inc.,* 309 F.R.D. 593, 604 (N.D.

9

Cal. 2015) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."); *O'Connor*, 2015 WL 5138097, at *35 ("resolving the Class Members' claims through one adjudication rather than thousands of separate suits is clearly the superior method of resolving these cases for the Plaintiffs, Uber, and the Court.")

Accordingly, all requirements for a settlement class under Rule 23 have been met, and the Court should certify the proposed Settlement Class.

## VI.    THE SETTLEMENT IS FAIR AND REASONABLE

Preliminary approval of a settlement and notice to the class is appropriate if it: (1) is the product of serious, informed, noncollusive negotiations; (2) has no obvious deficiencies; (3) falls within the range of possible approval; and (4) does not improperly grant preferential treatment to class representatives or segments of the class. *Deaver v. Compass Bank*, 2015 WL 4999953, *4 (N.D. Cal. Aug. 21, 2015).

### A.    The Settlement is a Product of Serious, Informed, Non-Collusive Negotiations

For the parties "to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007). Thus, adequate discovery and the use of an experienced mediator support a finding that settlement negotiations were both informed and non-collusive. See *Villegas*, 2012 WL 5878390, at *6; *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive").

Here, the parties exchanged discovery and information prior to engaging in a mediation, including exchange of damages discovery concerning the claims at issue here. Likewise, the parties had begun to litigate the merits of their claims through

10

Defendant's motion to dismiss and motion to strike.  Thereafter, Defendant advanced several legal theories that created a risk that a class may not be certified, resulting in Class Members receiving nothing.  The parties met with a highly experienced mediator who is very knowledgeable about wage and hour issues including independent contractor misclassification. The settlement the parties have reached was the result of thorough negotiations by experienced counsel familiar with the applicable law, class action litigation, and the facts of this case. The parties had ample information, expert guidance from an experienced mediator, and intimate familiarity with the strengths and weaknesses of their respective cases before settling. *See Vasquez*, 266 F.R.D. at 489 (approving settlement where, "[b]y the time the settlement was reached, the litigation had proceeded to a point in which both plaintiffs and defendants had a clear view of the strengths and weaknesses of their cases.").

## B.     The Settlement Has No Obvious Deficiencies

A court should also consider possible deficiencies in a settlement including, for example, issues surrounding the release of claims, the notice plan, the plan of allocation, and a request for attorneys' fees. *See Custom LED, LLC v. eBay, Inc*., 2013 WL 6114379, *7-8 (N.D. Cal. Nov. 20, 2013); *Deaver*, 2015 WL 4999953, at *7.

### 1.     Release

Releases in class settlements should be approved when claims released by unnamed class members are limited to those related to the conduct alleged in the complaint (e.g., in this case, claims relating to alleged independent contractor misclassification). *Cotter v. Lyft, Inc.,* 193 F. Supp. 3d 1030, 1038 (N.D. Cal. 2016) (in independent contractor misclassification case, approving settlement where recovery was based primarily on potential reimbursement damages but release included other wage claims related to misclassification, noting "What matters is whether the released claims arise from the same facts as those alleged in

11

the lawsuit, and whether the settlement as a whole is reasonable in light of the

strength and value of all the claims being released.").

The scope of the release here follows the above parameters, as it is limited to

claims based on or reasonably related to the claims asserted in this action.

Unrelated claims – e.g., claims for discrimination – are not released by this

settlement on a class-wide basis. Claims that arise against Defendant post-

preliminary approval, even misclassification-based claims, are likewise not

released (nor could they be released).

## 2.     Notice Plan

Under Fed. R. Civ. P. 23(c)(2)(B), a class notice must clearly and concisely

state in plain, easily understood language: (i) the nature of the action; (ii) the

definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a

Class Member may enter an appearance through an attorney if the member so

desires; (v) that the court will exclude from the class any member who requests

exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding

effect of a class judgment on members under Rule 23(c)(3). Class members are

entitled to the best notice practicable, reasonably calculated under the

circumstances to apprise him or her of the pendency of the class action. *Silber v.

Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994).

Here, the proposed notice is easy to read and includes all information

necessary for Class Members to decide whether to participate in the settlement, opt

out, or object over the 45-day notice period. Class Members will receive the notice

by US Mail at the most recent address they provided to Defendant.  In the event

that mail is returned to the Settlement Administrator as undeliverable, the notice

packet will be forwarded to the forwarding address affixed thereto, or, if no

forwarding address is provided, the Settlement Administrator will attempt to

determine the correct address via skip-trace, or other search using the name,

address, and/or Social Security Number associated with the Class Member, and re-

12

mail the notice packet to the new address. This notice plan is an efficient, effective, and cost-efficient way to provide notice of the settlement to Class Members.

### 3.     Claim Process

District courts in the California routinely approve the use of a claims process where (as here) the agreement also provides that there will not be a reversion of funds to the defendant. *Il Fornaio (Am.) Corp. v. Lazzari Fuel Co*., *LLC*, No. C 13-05197 WHA, 2014 WL 6845197, at *5 (N.D. Cal. Dec. 4, 2014); *Stuart v. Radioshack Corp.,* No. C-07-4499 EMC, 2010 WL 3155645, at *2 (N.D. Cal. Aug. 9, 2010); *Covillo v. Specialtys Cafe,* No. C-11-00594 DMR, 2013 WL 5781574, at *4, 7 (N.D. Cal. Oct. 25, 2013); *Burden v. SelectQuote Ins. Servs.*, No. C 10-05966 SBA, 2013 WL 1190634, at *3, 6 (N.D. Cal. Mar. 21, 2013).

Here, the parties have agreed to a non-reversionary claims process, pursuant to which Class Members can submit a claim via U.S. Mail.   This claims process is important because the claim process allows Class Members to provide the Settlement Administrator with updated mailing addresses if necessary, which is essential in cases like this one, in order to successfully deliver settlement payments to class members, where class members tend to move frequently.

### 4.     Attorneys' Fees

As will be briefed prior to final approval, Plaintiffs' Counsel intends to apply for fees and costs not to exceed 30% of the gross settlement fund.  This is within the typical range for class action fees in this circuit. *Barbosa*, 297 F.R.D. at 448 ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value."); *see also Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 492 (E.D. Cal. 2010) (collecting recent wage and hour cases in which counsel received fee awards in the range of 33.3% to 30% of the common fund); *Lusby v. GameStop Inc*., 2015 WL 1501095, *9 (N.D. Cal. Mar. 31, 2015) (finding a one third fee award appropriate because to the results achieved, the risk of litigation, the skill required and the quality of work, and the

13

contingent nature of the fee and the financial burden carried by the plaintiffs); *Barnes v. The Equinox Grp.,* Inc., 2013 WL 3988804, *4 (N.D. Cal. Aug. 2, 2013) (awarding one-third of gross settlement in fees and costs because counsel assumed substantial risk and litigated on a contingency fee-basis); see also *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 511, 376 P.3d 672, 692 (2016) (affirming fee award of one-third gross settlement and discussing benefits of using percentage of the fund approach to awarding fees, and noting that the "lodestar crosscheck" is not required).

### D.    The Settlement Falls Within the Range of Possible Approval

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiff's expected recovery balanced against the value of the settlement offer." *Deaver*, 2015 WL 4999953, *9 (N.D. Cal. Aug. 21, 2015). A careful risk/benefit analysis must inform counsel's valuation of a class's claims. *Lundell v. Dell, Inc.,* 2006 WL 3507938, *3 (N.D. Cal. Dec. 5, 2006). "When determining the value of a settlement, courts consider both the monetary and nonmonetary benefits that the settlement confers." *Miller v. Ghirardelli Chocolate Co.*, 2015 WL 758094, *5 (N.D. Cal. Feb. 20, 2015).

In negotiating the settlement, Plaintiff made the following approximate valuation of the case.  Plaintiff assumed an average pay rate of $10.50 per hour, California's minimum wage, and used that to calculate damages and penalties for the class.  Haffner Decl. at ¶ 13.

The nature of the Class Members' work makes it extremely difficult to calculate exactly when each driver was in California versus when he was driving out of state.  For example, a United States Department of Transportation ("DOT") log only indicates where a driver starts and stops.  It does not indicate when a driver crosses state lines.  However, based on the available information, Plaintiff estimates that he and the Class spent on average half of 1 day per week out of a 5

14

day workweek driving in California for Atlas.  Haffner Decl. at ¶ 14.

For purposes of settlement, Plaintiff calculated the total amount of damages and penalties under California law for the time period of the lawsuit to reflect only the work time Plaintiff and the Class drove in California.  Haffner Decl. at ¶ 15; *see Sullivan v. Oracle* (2011) 59 Cal.App.4th 1191, holding California's overtime law applies to full days and weeks of work performed in California by nonresidents; *see also Bernstein v. Virgin America, Inc.*, 2016 WL 6576621, *10 (C.D. Cal. 2016).

Plaintiff calculated the total damages for failure to provide rest breaks as 1 hour of premium pay per week, at $10.50 per hour, multiplied by 93,745.57, the total number of weeks worked by the class members from four years prior to the filing the complaint until November 15, 2017, for a total of $984,328.50. Haffner Decl. at ¶ 16. Minimum wage damages were as follows: $10.50 per hour, times number of weeks worked by the 494 class members, which equals $984,328.50. Haffner Decl. at ¶ 16.  Plaintiff calculated penalties for failure to pay all wages on separation damages by multiplying the number of drivers who stopped driving under Atlas' DOT authority during the Class Period (46) and multiplying that amount by monthly equivalent of $10.50 per hour ($1,680.00) which comes to $77,280.00.  Thus, Plaintiff estimates that the total potential recovery would be $2,045,937.00.  Haffner Decl. at ¶ 16.

Plaintiff did not include damages for meal breaks in its assessment as it was based on the assumption that the drivers were only considered in California for half a day at a time, which is not the 5 hours necessary to trigger a meal break.  Haffner Decl. at ¶ 16.  Damages for expense reimbursements were also discounted based on Defendant's argument that these expenses occurred outside of California and that the business expenses were accounted for in driver's pay. Haffner Decl. at ¶ 16.

As part of the settlement Plaintiff included in the settlement a release as to

15

inaccurate wage statements and PAGA claims.  These are claims which were not being pursued by Plaintiff but were added to the second amended complaint as part of the settlement.  They are statutory penalties derivative of Plaintiff's main claims.  These wer difficult to establish given the majority of the time was spent working outside of California.  Therefore, as discussed previously, Plaintiff allocated $25,000.00 to the PAGA claim.  Plaintiff believes this is reasonable and warranted in light of the settlement as a whole. Haffner Decl. at ¶ 17.

In sum, the settlement represents approximately 72% of the total potential recovery for alleged violations occurring within California.  Plaintiff believes this to be a fair and adequate settlement of these claims taking into account all issues and risks related to liability, class certification, and damages.  Haffner Decl. at ¶ 18.

While Plaintiff is optimistic that he would succeed, in reaching this settlement, he reasonably considered certain risks. Chief among these risks was that: (1) that Plaintiff may not prevail on some or all of his substantive claims, in particular Plaintiff would have had to overcome the hurdle that Plaintiff did not sign any agreements directly with Atlas but rather entered into contracts with agents who themselves have agreements with Atlas; (2) Atlas contends that the dormant Commerce Clause preempts Plaintiff's attempt to apply California state wage and hour law to days when a Class Member did any interstate driving; (3) Atlas contends that the doctrine of conflict preemption preempts Plaintiff's attempt to apply California laws relating to expense reimbursement and meal/rest periods, even to the extent those claims are brought with respect to days that PCMs worked exclusively in California; (4) Atlas contends that the doctrine of field preemption bars Plaintiff's claims because the framework of DOT Hours of Service regulations is so pervasive that the court can infer Congress's intent to displace California's minimum wage and meal/rest break laws altogether; (5) Atlas contends that there are legislative efforts to amend the FAAAA to clarify that it preempts California's

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

laws concerning wages, hours, and working conditions, including minimum wages, meal breaks, and rest breaks; (6) that some of Plaintiff's causes of action may not be amenable to class-wide resolution; (7) the Court could determine that a finder of fact could not resolve the misclassification issue on a class wide basis; (8) the uncertainty associated with trial; and (9) that Defendant would likely appeal any adverse orders or judgments. Haffner Decl. at ¶ 11.  Therefore, this settlement falls within the possible range of approval.

### E.   The Settlement Does Not Unfairly Grant Preferential Treatment to Any Class Members

Under this factor, a court may also assess whether the allocation of the settlement fund may "unfairly benefit certain Class Members." *Tijero v. Aaron Bros., Inc.*, 2013 WL 60464, *10 (N.D. Cal. Jan. 2, 2013). "[T]o the extent feasible, the plan should provide Class Members who suffered greater harm and who have stronger claims a larger share of the distributable settlement amount." *Hendricks v. StarKist Co.*, 2015 WL 4498083, *7 (N.D. Cal. July 23, 2015). However, "courts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Id.* (*citing Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, *5 (C.D. Cal. May 6, 2014)).

Here, the settlement provides for a recovery based on the amount of time the driver was qualified to drive under Atlas' DOT authority.  Plaintiff contends that Class Members that qualified to drive for a longer period of time suffered a greater share of the harm and correspondingly should collect a larger amount than those who spent less time driving under Atlas' DOT authority.  Under the proposed settlement a Class Member's recovery will correspond directly to the extent of his or her alleged injuries.   Thus, this plan properly provides Class Members who Plaintiff contends suffered greater harm and who have stronger claims a larger share of the settlement fund. See *In re Oracle Sec. Litig.*, 1994 WL 502054, *1 (N.D. Cal.

17

June 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.").

Additionally, under this factor, a court may also preliminarily consider the propriety of agreed upon class representative enhancements, which, like a request for attorneys' fees and costs, is subject to further review on final approval. *Deaver*, 2015 WL 4999953, *8. As will also be briefed in subsequent filings, the agreed-upon enhancement in the amount of $15,000. *E.g., Lusby*, 2015 WL 1501095, *5 (awarding $7,500 to each of the four class representatives from $750,000 fund); *Hopson v. Hanesbrands, Inc*., 2009 WL 928133, *10 (N.D. Cal. Apr. 3, 2009) (approving $5,000 award to one member of 217 member class from $408,420 settlement amount).

## VII.   CONCLUSION

For the foregoing reasons, Plaintiff submits that the Parties' settlement agreement is fair and reasonable and should be preliminarily approved. Upon the Court's preliminary approval, Plaintiff will instruct the Settlement Administrator to proceed with the notice process and Plaintiff will request that the Court schedule a hearing for the Court to grant final approval and allow settlement payments to be distributed to the class.


DATED:  November 27, 2017          HAFFNER LAW PC


                                   By:  */s/Graham G. Lambert*
                                        Graham G. Lambert
                                        Attorney for Plaintiff,
                                        FRANK LEITZBACH

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT